GERALD D. ROBERTS CONSULTANTS, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; GERALD D. ROBERTS AND JUDY A. ROBERTS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gerald D. Roberts Consultants, Inc. v. Commissioner
Docket Nos. 19849-89, 19850-89[1]
United States Tax Court
T.C. Memo 1991-490; 1991 Tax Ct. Memo LEXIS 539; 62 T.C.M. (CCH) 890; T.C.M. (RIA) 91490; September 30, 1991, Filed *539 Decisions will be entered under Rule 155. Robert C. Anderson, for the petitioners. Terry L. Zabel, for the respondent. JACOBS, Judge. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined the following deficiencies in and additions to petitioner Gerald D. Roberts Consultants, Inc.'s Federal income tax: Additions to Tax
Sec. 6653(a)(1) [2]
Sec. 6653(a)(2)
Taxable
for 1985 and
for 1985 and
Year
Sec. 6653(a)(1)(A)
Sec. 6653(a)(1)(B)
Sec.
Ending [3]
Deficiency
for 1986
for 1986
6661
9/30/85
$ 12,390
$ 620
50% of interest
$ 3,098
on $ 12,390
9/30/86
$ 19,454
$ 973
50% of interest
$ 4,864
on $ 19,454
*540 Respondent determined the following deficiencies in and additions to petitioners Gerald D. and Judy A. Roberts' Federal income tax: Additions to Tax
Sec. 6653(a)(1)
Sec. 6653(a)(2)
for 1985 and
for 1985 and
Sec. 6653(a)(1)(A)
Sec. 6653(a)(1)(B)
Sec.
Year
Deficiency
for 1986
for 1986
6661
1985
$ 9,098
$ 455
50% of interest
$ 2,275
on $ 9,098
1986
$ 14,857
$ 743
50% of interest
$ 3,714
on $ 14,857
After concessions, the issues for decision are: 1. Whether Gerald D. Roberts Consultants, Inc. was a personal holding company during both years in issue and therefore subject to the personal holding company tax. We hold that it was. 2. Whether certain payments made by Gerald D. Roberts Consultants, Inc. to or for the benefit of its sole stockholder, Gerald Roberts, and members of his immediate family, constitute deductible corporate business expenses. We hold that they do not. 3. Whether said corporate payments are taxable to Gerald Roberts as constructive dividends, or alternatively, whether pursuant to section 269A, respondent may attribute the income received by Gerald D. Roberts Consultants, Inc. to Gerald Roberts personally. We hold that the *541 corporate payments constitute constructive dividends to Gerald Roberts. 4. Whether the corporate and individual petitioners herein are liable for additions to tax for negligence or intentional disregard of rules and regulations. We hold that they are. 5. Whether the corporate and individual petitioners herein are liable for additions to tax for substantial understatements of income tax. We hold that they are. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations of fact and accompanying exhibits are incorporated herein by this reference. Gerald D. Roberts Consultants, Inc. (Roberts Consultants) was incorporated in Mississippi in October 1981. Its principal place of business was located in Marquette, Michigan, at the time it filed its petition. Its sole stockholder was Gerald Roberts. Gerald and Judy Roberts, husband and wife, resided in Southport, North Carolina, at the time they filed their petition. They filed joint Federal income tax returns for both years in issue. Background
From 1973 to 1980, Gerald Roberts was employed by the Tennessee Valley Authority (TVA) as a generating power plant operator. During the first several *542 years of his employment with TVA, he worked at a fossil fuel electrical power generating plant. Beginning in 1976, he worked at the Brown's Ferry Nuclear Facility in Decatur, Alabama. As a result of his experience with nuclear power, he received (in April 1978) an operator's license from the U.S. Nuclear Regulatory Commission. In 1980, he left the employ of TVA to work for United Engineers and Constructors (United). Roberts Consultants
Shortly after the commencement of his employment at United, Mr. Roberts was contacted by Jim Church, of Power Management Consultants Corporation (PMC). PMC was a general contractor which provided management and consulting services to utility companies for the construction and startup of new nuclear power plants. PMC entered into subcontracts with others, such as Mr. Roberts, who were familiar with the various phases of the construction and startup of nuclear power plants. In October 1981, PMC offered to hire Mr. Roberts as a subcontractor to perform work at the Grand Gulf Nuclear Power Plant in Grand Gulf, Mississippi. Before commencing work at the Grand Gulf Nuclear Power Plant, but subsequent to accepting work under the subcontract, *543 Mr. Roberts caused Roberts Consultants to be organized. The stated purpose of Roberts Consultants was "to carry on a general engineering and consulting business relating to power plants." During the latter part of 1982, PMC offered to hire Roberts Consultants as a subcontractor to perform work at the Clinton Nuclear Power Plant in Clinton, Illinois. This offer was accepted; and at the end of November 1982, Mr. Roberts left the Grand Gulf Nuclear Power Plant to work at the Clinton Nuclear Power Plant. Ostensibly, the party contracting with PMC (for services to be rendered at both the Grand Gulf and Clinton Nuclear Power Plants) was Roberts Consultants. However, at all relevant times, Gerald Roberts was the sole service provider under the contracts. PMC paid Roberts Consultants for the services rendered by Gerald Roberts at the Grand Gulf and Clinton Nuclear Power Plants. Roberts Consultants, in turn, paid Gerald Roberts. Initially, the arrangement between PMC and Gerald Roberts was verbal. In June 1984, Jim Church, on behalf of PMC, and Gerald Roberts, purportedly on behalf of Roberts Consultants, formalized their prior arrangements by executing five contracts. These written *544 agreements purported to cover five periods commencing October 1981, April 1982, August 1982, July 1983, and November 1983. All five contracts contain the following: Description of Second Party's [Roberts Consultants'] Duties PMC Corp. has entered into this agreement based on a given consultant's resume, experience and potential and that individual shall put forth 100% effort in return for the subject compensation at all times, without regards to assignments or changes to those assignments * * *.
All income received by Roberts Consultants from PMC was generated by Mr. Roberts' services. Gerald Roberts' and Roberts Consultants' affiliation with PMC ended in June 1985. Walker Training Services, Inc.
In October 1985, Mr. Roberts met Danny Walker, of Walker Training Services, Inc. (Walker Training). Walker Training developed operator training programs for power plants. Roberts Consultants entered into a consulting contract with Walker Training, pursuant to which Roberts Consultants agreed to establish a training program for nuclear operators at the Hatch Nuclear Power Plant in Savannah, Georgia. Gerald Roberts was the only service provider supplied by Roberts Consultants *545 under its agreement with Walker Training. The only income Roberts Consultants received from October 26, 1985, through February 28, 1986, came from its contract with Walker Training for Mr. Roberts' services. While working at the Hatch Nuclear Power Plant, Gerald Roberts lived in rented quarters in Savannah; his wife and two children lived in Supply, North Carolina. Resource Technical Services, Inc.
On February 5, 1986, Roberts Consultants entered into an agreement with Resource Technical Services, Inc. (Resource Technical), pursuant to which Roberts Consultants agreed to develop a written alternative safe plant shutdown procedure in the event of a fire at the Brunswick Steam Electric Station in Southport, North Carolina. The agreement, in pertinent part, provided: "The CONTRACTOR [Roberts Consultants] shall submit a list of its employees who will be providing services under this contract, and the COMPANY [Resource Technical] reserves the right to reject any person." Mr. Roberts submitted a list containing the names of persons who might be potential corporate employees of Roberts Consultants; however, at the time the list was submitted to Resource Technical, Roberts Consultants *546 had no relationship or arrangement with the persons whose names were submitted. All income received by Roberts Consultants from March 21, 1986, to December 31, 1986, came from Resource Technical with regard to the services rendered by Gerald Roberts at the Brunswick Steam Electric Station. Payments by Roberts Consultants to Gerald Roberts
Roberts Consultants deducted as business expenses the following payments made to or for the benefit of Gerald Roberts, and members of his immediate family, which respondent disallowed: Taxable Year Ended
9/30/85
9/30/86
Auto Expense
$ 3,005
$ 1,562
Cost of Goods Sold Expense *
--
9,185
Depreciation Expense
5,005
3,200
Insurance Expense
1,143
899
Interest Expense
899
764
License Expense
233
96
Meetings Expense
1,617
284
Miscellaneous Expense
880
553
Per Diem Expense
--
11,460
Rent Expense
2,400
200
Supplies Expense
1,208
356
Telephone Expense
150
260
Total
$ 16,540
$ 28,819
*547 Roberts Consultants concedes the disallowance of the following claimed corporate deductions: Taxable Year Ended
9/30/85
9/30/86
Auto Expense
$ 2,254
$ 781
Insurance
487
200
Depreciation
4,000
1,600
Interest Paid
674
382
Auto License
175
48
Total
7,590
3,011
Less: Amount paid to Corp. *
-900
-900
Amount Conceded
$ 6,690
$ 2,111
In the notice of deficiency issued to Gerald and Judy Roberts, respondent determined that Gerald Roberts received constructive dividends with respect to the following corporate payments: 1985
1986
Auto Expense Reimbursement
$ 3,005
$ 1,563
to Gerald Roberts
Auto Insurance
649
399
Auto License
233
96
Auto Loan Payments to GMAC
4,303
4,590
Insurance Premiums
494
701
Telephone Bills Reimbursed
150
260
to Gerald Roberts
Payments to Children
800
800
Repairs to VCR
80
253
Computer Purchase
1,007
--
Prentice Hall Books
102
--
Post Office Box Rent
--
27
Unsubstantiated Travel Reimbursement
1,617
284
to Gerald Roberts
Unsubstantiated Supplies Reimbursement
201
426
to Gerald Roberts
Moving Expenses Reimbursement
--
300
to Gerald Roberts
Loans to Gerald Roberts
16,000
--
Per Diem to Gerald Roberts
--
19,845
Total
$ 28,641
$ 29,544
*548 Automobile Expenses
In 1984, 1985, and 1986, Roberts Consultants owned a 1984 Blazer station wagon (with a five-passenger capacity) and a 1982 Oldsmobile 98 (with a six-passenger capacity). During this time, Mr. and Mrs. Roberts personally owned a 1969 restored Corvette, which was a two-passenger vehicle. The named insureds with regard to the corporate-owned vehicles were Gerald and Judy Roberts. Mr. Roberts used the corporate vehicles for commuting purposes; Mrs. Roberts used the corporate vehicles for family purposes. Respondent determined that Mr. Roberts received a constructive dividend as a result of the individual petitioners' use of the corporate vehicles for personal and family purposes. The individual petitioners concede the correctness of respondent's determination to the extent of $ 6,690 for 1985 and $ 2,111 for 1986. Meetings Expenses
Roberts Consultants claimed a deduction for meetings and convention expenses, which respondent disallowed. Respondent concedes $ 1,385 of the claimed meeting expenses for 1985. The deduction claimed by Roberts Consultants for 1986 (in the amount of $ 284) relates to a trip taken by Mr. and Mrs. Roberts and their two *549 children from Supply, North Carolina, to Tupelo, Mississippi, in August 1986. The purpose of the trip was to visit Rita and Richard Sinervo. The Sinervos were longtime friends of the Roberts. In addition, Mrs. Sinervo prepared the Roberts' personal tax returns. In petitioners' post-trial briefs, Roberts Consultants concedes 75 percent (or $ 213) of the amount of the deduction claimed for the trip to Tupelo, and the individual petitioners concede that 50 percent (or $ 142) constitutes a constructive dividend. Miscellaneous Deductions
Roberts Consultants claimed deductions in 1985 for payments aggregating $ 800 to his two minor children (the Roberts have two sons, one born in 1973 and the other in 1976) for cleaning and other tasks. Similar deductions were claimed in 1986 as "cost of goods sold." Roberts Consultants also claimed deductions of $ 80 in 1985 and $ 253 in 1986 with regard to repairs made to a VCR which ostensibly Mr. Roberts needed in the performance of services rendered at various power plants. In petitioners' post-trial briefs, they concede 10 percent (or $ 33) of the aggregate amount ($ 80 + $ 253 = $ 333) claimed for repairs to the VCR. Correspondingly, *550 the individual petitioners concede that 10 percent of the VCR repairs (or $ 33) constitutes a constructive dividend. Finally, Roberts Consultants deducted $ 300 in 1986 for an unexplained miscellaneous expense. Per Diem Expenses
Roberts Consultants paid Gerald Roberts a per diem consisting of two types of items, a daily $ 40 subsistence expense, and Mr. Roberts' out-of-pocket expenses. Respondent disallowed the claimed corporation deduction and posits that such payment constituted income dividends to Mr. Roberts. The individual petitioners concede that their income should be increased by $ 7,300 for per diem payments to Mr. Roberts from April 1, 1986, to September 30, 1986. Rent Expense
Roberts Consultants claimed rental deductions for payments made to Mr. Roberts for use of office space in the individual petitioners' home. No testimony or evidence was introduced indicating that a written rental agreement existed between Roberts Consultants and the individual petitioners. During these periods, Mr. Roberts was provided with office space at the Clinton Nuclear Power Plant, the Hatch Nuclear Power Plant, and the Brunswick Steam Electric Station. Supplies Expenses
*551 Roberts Consultants claimed a $ 1,543 deduction for supplies in 1985, of which $ 1,208 was disallowed. Of the $ 1,208 disallowed amount, $ 1,007 was a reimbursement to Gerald Roberts for the purchase of a Commodore computer. The computer was never used by Roberts Consultants or the individual petitioners. Roberts Consultants provided no substantiation for the remaining $ 201 ($ 1,208 - $ 1,007) disallowed amount. Roberts Consultants also claimed a $ 520 deduction for supplies in 1986, of which $ 356 was disallowed by respondent. No explanation or substantiation regarding this expenditure was provided. Telephone Expenses
Roberts Consultants did not have its own telephone. It claimed deductions for payments made to Gerald Roberts as reimbursement for alleged corporate usage of the Roberts' phone. Life Insurance Premiums
Roberts Consultants paid (and deducted) premiums on two insurance policies: one policy on the life of Mr. Roberts, with Mrs. Roberts and the children as beneficiaries, and the other on the life of Mrs. Roberts, with Mr. Roberts and the children as beneficiaries. Respondent determined that payment of these premiums constituted constructive dividends *552 to Mr. Roberts. The individual petitioners concede that they had unreported income in 1985 and 1986 in the amounts of $ 202 and $ 208, respectively, arising from the payment of the insurance premiums by Roberts Consultants. The conceded amounts represent but a portion of the total premiums paid. Loans
Mr. Roberts received payments (ostensibly as loans) totaling $ 16,000 from Roberts Consultants on February 8, 1985, March 6, 1985, April 10, 1985, May 1, 1985, and May 6, 1985. Respondent determined that these payments constituted constructive dividends to Mr. Roberts. A reduction in the amount of "loans to stockholders account," as set forth on the 1986 corporate tax return, indicates that Mr. Roberts repaid Roberts Consultants a portion of these "loans" between October 1, 1985, and September 30, 1986. However, no direct evidence was introduced to corroborate the repayment. OPINION Issue 1. Personal Holding Company
Respondent determined that Roberts Consultants was a personal holding company within the meaning of section 542(a), and thus subject to the personal holding company tax imposed by section 541 for its 1985 and 1986 taxable years. Section 541 imposes *553 a tax on every "personal holding company" equal to 50 (now 28) percent of its undistributed "personal holding company income." A corporation is a personal holding company if it meets both a stock ownership test and a tainted income test, as specified in section 542(a). A corporation satisfies the stock ownership test if, at any time during the last half of the taxable year, more than 50 percent in value of its outstanding stock is owned, directly or indirectly, by or for not more than five individuals. Sec. 542(a)(2). A corporation satisfies the tainted income test if at least 60 percent of its adjusted ordinary gross income for the taxable year constitutes personal holding company income. Sec. 542(a)(1). Section 543 defines personal holding company income. It provides, in pertinent part, as follows: (a) GENERAL RULE. - For purposes of this subtitle, the term "personal holding company income" means the portion of the adjusted ordinary gross income which consists of: * * * (7) PERSONAL SERVICE CONTRACTS. -- (A) Amounts received under a contract under which the corporation is to furnish personal services; if some person other than the corporation has the right to designate *554 (by name or by description) the individual who is to perform the services, or if the individual who is to perform the services is designated (by name or by description) in the contract; and (B) amounts received from the sale or other disposition of such a contract. This paragraph shall apply with respect to amounts received for services under a particular contract only if at some time during the taxable year 25 percent or more in value of the outstanding stock of the corporation is owned, directly or indirectly, by or for the individual who has performed, is to perform, or may be designated (by name or by description) as the one to perform, such services. [4]
Two statutory tests -- a designation test and a stock ownership test -- must be met in order for a contract to be considered a "personal service contract" within the meaning of section 543(a)(7). Kenyatta Corp. v. Commissioner, 86 T.C. 171, 183 (1986), affd. 812 F.2d 577 (9th Cir. 1987). The designation test requires that the individual who is to perform the services be designated, by name or by description, in the contract or that such individual can be so designated by some person other than the corporation. *555 Sec. 543(a)(7)(A). The stock ownership test requires that the person designated to perform services own at least 25 percent of the corporation's stock at some time during the taxable year. The 25-percent stock ownership test is set forth in the flush language of section 543(a)(7). Roberts Consultants concedes that Gerald Roberts, its primary service provider, owned 100 percent of its stock; thus, the stock ownership tests set forth in sections 542(a)(2) and *556 543(a)(7) have been satisfied. Accordingly, we need only determine whether the designation test has been satisfied. Roberts Consultants argues that it was not a personal service corporation since its contracts with PMC, Walker Training, and Resource Technical did not designate Gerald Roberts, by name or description, as the individual who would perform the services required under the contract. We reject this argument. The facts in this case are similar to those in RAS of Sand River v. Commissioner, 935 F.2d 270 (6th Cir. 1991), affg. per curiam a Memorandum Opinion of this Court. There, Richard A. Sinervo performed services for the Clinton Nuclear Power Plant through a contract between his wholly owned corporation and PMC. [5] The disallowed deductions which RAS of Sand River claimed consisted of personal living expenses of the corporation's owners. Mr. Sinervo was the only service provider for RAS of Sand River. The corporate petitioner failed to prove that Mr. Sinervo was not designated by name or description in the contract with PMC. RAS of Sand River failed to establish a base of potential employees and relied only upon Mr. Sinervo to perform said work. Also, the utility *557 company which contracted with PMC for the construction of the Clinton Nuclear Power Plant designated Mr. Sinervo by accepting him on the basis of his resume. We found that RAS of Sand River failed to meet its burden of proof with respect to the designation test and concluded that RAS of Sand River was a personal service company. In the case before us, Gerald Roberts was president, sole shareholder, and sole employee of Roberts Consultants. He performed all of Roberts Consultants' services at the Clinton Nuclear Power Plant, the Hatch Power Plant, and the Brunswick Steam Electric Station. Although his services were not so valuable *558 and unique as to be irreplaceable, Kenyatta Corp. v. Commissioner, supra at 188, he provided the only services which generated gross receipts for Roberts Consultants during both years in issue. The parties which contracted with Roberts Consultants (PMC, Walker Training, and Resource Technical) knew that Gerald Roberts and Roberts Consultants were in reality one and the same, and that Gerald Roberts would provide all work under the service contracts. Gerald Roberts provided services for PMC at the Clinton Nuclear Power Plant for 4 years before signing service contracts with PMC. These contracts were backdated to the date when services were first performed by him. Although Mr. Roberts is not designated by name, the backdated PMC contracts do not foreclose the possibility that he was designated by description as the person to perform services thereunder. [6] In pertinent part the written contracts provide: PMC Corp. has entered into this agreement based on a given consultants resume, experience and potential and that individual shall put forth 100% effort in return for the subject compensation at all times * * *.
We are convinced that the PMC contracts, in addition *559 to the others Roberts Consultants entered into, were contracts for the services of Gerald Roberts and Gerald Roberts alone. He was the only service provider for Roberts Consultants, and PMC knew that it was contracting for Gerald Roberts' services. [7] We likewise are convinced that Walker Training and Resource Technical knew that they were contracting for Gerald Roberts' services. PMC, Walker Training, and Resource Technical entered into the contracts with Roberts Consultants based on Gerald Roberts' reputation and qualifications. Roberts Consultants did not attempt to supply any service provider other than Mr. Roberts. And there is no indication that anyone other than Gerald Roberts was even considered as a service provider under the contracts. (We note that Resource Technical reserved the right to reject any substitute service provider and exercised that right by only accepting Mr. Roberts to perform work under the contract.) Control over the earning of all of the income in question remained with him. The reality of the situation involved herein is that Gerald Roberts was the designated individual who was required to perform services for PMC, Walker Training, and Resource *560 Technical. Thus, we find and hold that Gerald Roberts was the person designated as the person to furnish services under Roberts Consultants' service contracts with PMC, Walker Training, and Resource Technical. In sum, since both the stock ownership and the designation tests have been met, the total income Roberts Consultants received during the years in issue was personal holding company income pursuant to section 543(a). Roberts Consultants neither argued nor attempted to prove that its personal holding company income was less than 60 percent of its adjusted *561 ordinary gross income. See sec. 542(a)(1). Accordingly, during both years in issue, Roberts Consultants was a personal holding company, and thus subject to the personal holding company tax. Issue 2. Section 162(a) Deductions
The next issue for decision is whether certain payments made by Roberts Consultants to or for the benefit of Gerald Roberts and members of his immediate family constitute deductible corporate business expenses. At the outset, we note that deductions are a matter of legislative grace, and taxpayers are required to prove their entitlement to deductions by a preponderance of the evidence. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933). Section 162(a) permits the deduction of all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Whether expenditures are for ordinary and necessary business expenses is a question of fact. Commissioner v. Heininger, 320 U.S. 467, 473-475, 88 L. Ed. 171, 64 S. Ct. 249 (1943). Personal, living, or family expenses are generally not deductible. Sec. 262. Automobile Expenses
Gerald Roberts used the corporate-owned vehicles to commute to work. Mrs. Roberts used the vehicles *562 for family purposes. There is no evidence in the record which indicates that they were used for any purpose other than commuting and family activities; expenses arising from commuting and family activities are personal, nondeductible expenses. Respondent's disallowance of the deductions claimed by Roberts Consultants totaling $ 9,790 for 1985 and $ 6,021 for 1986, and labeled as auto expenses, depreciation expense, insurance expense, interest expense, and license expense, is sustained. Meetings Expenses
Both parties concede portions of the corporate deductions claimed for meetings expenses. Even though we are mindful that one of the persons the Roberts family visited during their trip to Tupelo, Mississippi, was Rita Sinervo, their tax preparer, petitioners failed to show that such trip was other than for pleasure. Accordingly, none of the expenses of such trip are deductible, and respondent's determination in this regard is sustained. Miscellaneous Expenses
In 1985, Roberts Consultants deducted payments made to the Roberts' minor children as a miscellaneous expense. These payments were for services rendered in helping Mrs. Roberts perform cleaning tasks and going *563 to the mailbox. Such payments were rewards for performing family chores. As such, they are nondeductible personal expenses. Sec. 262. Roberts Consultants deducted payments made to repair the Roberts' VCR. Despite Mr. Roberts' testimony, we believe the VCR was used for personal purposes. (We did not find his testimony on this point to be credible.) Accordingly, the deductions for repairs to the VCR were properly disallowed. Finally, a $ 300 miscellaneous expense for 1986 was also properly disallowed, since Roberts Consultants did not substantiate this deduction. Per Diem Expenses
Roberts Consultants claimed a per diem expense deduction for payments made to Gerald Roberts. For 1985, the per diem expenses were included as part of "cost of goods sold." For 1986, the per diem expenses were listed separately. Notwithstanding the business characterization of the per diem expenses, we hold that such payments to Gerald Roberts for both years are not deductible. Had Gerald Roberts not utilized Roberts Consultants to receive payments from Walker Training and Resource Technical, he would not have been entitled to a deduction for travel and other expenses while working at the *564 Hatch Nuclear Power Plant in Savannah, Georgia, and the Brunswick Steam Electric Station in Southport, North Carolina, and maintaining a family home in Supply, North Carolina. Accordingly, respondent's disallowance of the corporate deduction for these expenses is sustained. Rent Expense
Roberts Consultants claimed deductions for 1985 and 1986 with regard to rent paid to Mr. Roberts for the use of space in the Roberts' home. Mr. Roberts was provided with office space at each power plant where he performed services; thus, it was not necessary for Roberts Consultants to rent a portion of the Roberts' home. Accordingly, respondent's disallowance of the claimed rent expense is sustained. Supplies Expenses
We sustain respondent's disallowance of a portion of the deduction claimed for supplies for failure to substantiate. Sec. 162(a). Telephone Expenses
Roberts Consultants failed to substantiate its claim for telephone expenses for 1985; thus, respondent's disallowance of the claimed telephone expenses for 1985 is sustained. The expenses for 1986 were for a telephone installation charge and flat monthly service charges incurred by Mr. Roberts. There is no evidence *565 that these expenses related to any business usage of Mr. Roberts' telephone. Accordingly, respondent's disallowance of the claimed telephone expenses for 1986 is sustained. Issue 3. Constructive Dividends
Respondent determined that payments made by Roberts Consultants to or for the benefit of Gerald Roberts and members of his immediate family constitute constructive dividend income. Dividend income is included in the gross income of the recipient. Sec. 61(a). The term "dividend" is defined as any distribution of property by a corporation to its shareholders out of post-1913 accumulated and current earnings and profits. Sec. 316(a). A distribution under section 301 may be found even though the corporation has not formally declared a dividend. Crosby v. United States, 496 F.2d 1384, 1388 (5th Cir. 1974). Gerald Roberts caused Roberts Consultants to be organized in order to convert personal living and family expenses into business expenses. [8] Where payments are made for the personal benefit of a shareholder by a corporation and such payments are not proximately related to the corporate business, the corporation is not entitled to deductions to the extent that they *566 relate to such personal use, and the payments are includable in the shareholder's income as constructive dividends to the extent of the corporation's earnings and profits. Falsetti v. Commissioner, 85 T.C. 332, 356 (1985). Our holding that the Roberts Consultants business expenses *567 in issue are not deductible does not automatically result in constructive dividends to Mr. and Mrs. Roberts. The test for constructive dividends in such circumstances is not only that the expenses be nondeductible to the corporation, but that the expenses also represent some economic gain or benefit to the shareholder. Falsetti v. Commissioner, 85 T.C. at 356-357. Gerald Roberts received an economic benefit with respect to the corporation's payment of automobile expenses, as well as reimbursements to him for telephone expenses, VCR repairs, computer purchase, supplies, travel expenses, moving expenses, and post office box rent. Such expenses were neither ordinary nor necessary business expenses, but rather reimbursement of Gerald Roberts' personal expenses. Accordingly, respondent's determination that the aforementioned corporate payments constitute income to the Roberts is sustained. Respondent determined the corporate purchase of Prentice Hall tax publications constituted constructive dividend income to Gerald Roberts. While we agree with said determination, we hasten to add that Gerald Roberts is entitled to a Schedule A deduction in an amount equal to the constructive *568 dividend. Insurance Premium Payments
Roberts Consultants also paid the insurance premiums on two life insurance policies: (1) One in which Mr. Roberts was the insured and the beneficiaries were Mrs. Roberts and the children; (2) the second in which Mrs. Roberts was the insured and Mr. Roberts and the children were the beneficiaries. The payment of premiums by a corporation on an insurance policy owned by a shareholder results in a constructive dividend to the shareholder. Paramount-Richards Theatres, Inc. v. Commissioner, 153 F.2d 602 (5th Cir. 1946); Canaday v. Guitteau, 86 F.2d 303 (6th Cir. 1936); Lynch v. Commissioner, T.C. Memo 1983-173. Thus, the insurance premiums paid by the corporation on behalf of the Roberts constitute constructive dividends. Payments to the Roberts' Children
It is well established that a payment made to a family member of a shareholder can constitute a section 301 distribution by the corporation with respect to the stock of the shareholder. Green v. United States, 460 F.2d 412, 419 (5th Cir. 1972); Epstein v. Commissioner, 53 T.C. 459, 474-475 (1969). Under proper circumstances, it is appropriate to hold that a *569 payment to a family member represents a distribution by the corporation to the shareholder. Epstein v. Commissioner, supra.
Roberts Consultants paid annual allowances to the Roberts' children in the amounts of $ 400 per child during 1985 and 1986. There is no indication that the activities of the children produced any benefit to the corporation. On the contrary, the childrens' activities benefited their parents. Thus, we sustain respondent's determination that the payments to the Roberts' children by Roberts Consultants constituted income to Gerald Roberts. Loans
Mr. Roberts also received loans from Roberts Consultants during 1985. The loans to shareholder account, as set forth on Roberts Consultants' 1986 tax return, indicates that the balance of said account was reduced by approximately $ 16,000 during the period commencing October 1985. No evidence was introduced that Mr. Roberts actually repaid the corporate loan. The forgiveness of a loan owed to a corporation by its sole shareholder is a constructive dividend to the shareholder. Accordingly, respondent's determination that the $ 16,000 reduction constitutes income to Gerald Roberts is sustained. *570 Per Diem
Finally, Mr. Roberts received payments totaling $ 19,845 from Roberts Consultants during 1986 as per diem expenses. We have found that these expenses were not ordinary and necessary corporate business expenses. Instead, they were expended for Gerald Roberts' rent, telephone charges, and gasoline. Gerald Roberts received an economic benefit as a result of these payments; accordingly, the payments are constructive dividends to him. Since we have decided that the Roberts received constructive dividends from Roberts Consultants, we need not address the section 269A issue. Issue 4. Section 6653(a) Addition To Tax
The next issue for decision is whether Roberts Consultants and Mr. and Mrs. Roberts are liable for the additions to tax provided by section 6653(a)(1) and (2) in 1985, and section 6653(a)(1)(A) and (B) in 1986. Section 6653(a)(1), which was redesignated 6653(a)(1)(A) for taxable years in which a return is due after December 31, 1986, provides that if any part of an underpayment of tax is due to negligence or intentional disregard of rules and regulations, there shall be added to the tax an amount equal to 5 percent of the underpayment. Section 6653(a)(2), *571 which was redesignated 6653(a)(1)(B) for taxable periods for which a return is due after December 31, 1986, provides that if any part of an underpayment of tax is due to negligence or intentional disregard of rules and regulations, there shall be added to the tax, in addition to the 5-percent addition provided by section 6653(a)(1), an amount equal to 50 percent of the interest payable under section 6601 with respect to the portion of such underpayment which is attributable to negligence. The addition to tax under section 6653(a)(2) is imposed for the period beginning on the last day prescribed by law for payment of such underpayment. Sec. 6653(a)(2)(B). Within the meaning of section 6653(a), negligence has been defined as the "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985), quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967). Petitioner bears the burden of proving that its underpayment of tax was not due to negligence. Bixby v. Commissioner, 58 T.C. 757, 791 (1972); Enoch v. Commissioner, 57 T.C. 781, 802-803 (1972). Roberts Consultants *572 claimed deductions for its 1985 and 1986 taxable years in the amounts of $ 16,540 and $ 28,819, [9] respectively, which we have found to be payments made to or for the benefit of the Roberts, and thus not ordinary and necessary business expenses. Roberts Consultants was formed and operated by Mr. Roberts for the purpose of converting personal expenses into tax deductions. Thus, Roberts Consultants is subject to additions to tax pursuant to section 6653(a)(1) and (2) for its 1985 taxable year, and subject to additions pursuant to section 6653(a)(1)(A) and (B) for its 1986 taxable year. Mr. and Mrs. Roberts failed to report constructive dividends received from the personal service corporation, Roberts Consultants, owned by Mr. Roberts during 1985 and 1986. Mr. Roberts formed and operated Roberts Consultants with the intent of reducing the Roberts' *573 personal income tax liability. Thus, the Roberts clearly did not exercise ordinarily prudent behavior. See Neely v. Commissioner, supra.Accordingly, they are subject to the additions to tax pursuant to section 6653(a)(1) and (2) for 1985 and the addition pursuant to section 6653(a)(1)(A) and 6653(A)(1)(B) for 1986. [10]
Issue 5. Section 6661 Addition To Tax
Section 6661(a) imposes an addition to tax when there is a "substantial understatement of income tax for any taxable year." [11] The amount of this addition to tax is equal to 25 percent of any underpayment *574 attributable to the substantial understatement. See Pallottini v. Commissioner, 90 T.C. 498 (1988). With respect to a personal holding company, an understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(a)(1) and (2). Roberts Consultants reported tax liabilities for its 1985 and 1986 tax years in the amounts of $ 3,497 and $ 5,593, respectively. Respondent determined a deficiency in tax for those years in the amounts of $ 12,390 and $ 19,454, respectively. Mr. and Mrs. Roberts reported income tax liabilities for 1985 and 1986 in the amounts of $ 3,878 and $ 6,319, respectively. Respondent determined that the Roberts have a deficiency in income tax arising from unreported constructive dividends for the taxable *575 years in issue in the amounts of $ 9,098 and $ 14,857, respectively. Petitioners have the burden of proof on this issue. Rule 142(a). Neither Roberts Consultants nor the Roberts presented proof relating specifically to such determinations. Accordingly, respondent's determination is sustained. To reflect the foregoing and concessions of the parties, Decisions will be entered under Rule 155. Footnotes
1. Consolidated for trial, briefing, and opinion.↩
2. All section references are to the Internal Revenue Code as amended and in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
3. Petitioner Gerald D. Roberts Consultants, Inc.'s taxable year ending September 30, 1985, will hereinafter be referred to as its 1985 taxable year, and its taxable year ending September 30, 1986, will hereinafter be referred to as its 1986 taxable year.↩
*. The disallowed portion of cost of goods sold expense represents corporate payments aggregating $ 8,385 to Gerald Roberts for reimbursement of his travel and living expenses from October 13, 1985, to February 28, 1986, while living in Savannah, and payments aggregating $ 800 to his two minor children.↩
*. It is not clear why the concession was reduced by the amount of Gerald Roberts' payment to Roberts Consultants.↩
4. The statutory provisions concerning personal service contracts were enacted to close the so-called incorporated talent loophole. Absent this provision, individuals receiving large amounts of personal service income could avoid the effect of the progressive income tax rates by arranging for wholly owned corporations to contract and receive compensation for their services. S. Rept. 1242, 75th Cong., 1st Sess. (1937), 1937-2 C.B. 609, 613; Kurt Frings Agency, Inc. v. Commissioner, 42 T.C. 472, 477 (1964), affd. per curiam 351 F.2d 951↩ (9th Cir. 1965).
5. We note that the Richard Sinervo in RAS of Sand River v. Commissioner, 935 F.2d 270↩ (6th Cir. 1991), affg. per curiam a Memorandum Opinion of this Court, is the brother of Vincent Sinervo, the accountant who prepared Roberts Consultants' tax returns as well as those of RAS of Sand River, and is the husband of Rita Sinervo, who prepared Gerald and Judy Roberts' personal tax returns.
6. See RAS of Sand River, Inc. v. Commissioner, supra↩, where we disregarded a similar written contract between PMC and the taxpayer involved therein. 7. We note that Mr. Roberts did not sign the November 8, 1983, contract on behalf of Roberts Consultants; however, the compensation package portion of the contract was signed personally by him on August 24, 1984. We consider this to be a further indication that PMC contracted for Mr. Roberts' services.↩
8. Mr. Roberts claims Roberts Consultants was formed as a result of Jim Church's insistence that PMC would do business only with a corporate subcontractor. We closely observed Mr. Roberts while he was testifying. For the most part, we found his testimony unconvincing; he was not a credible witness. We are not bound to accept uncontroverted testimony at face value if such testimony seems improbable, unreasonable, or questionable, Lovell and Hart, Inc. v. Commissioner, 456 F.2d 145, 148 (6th Cir. 1972), affg. per curiam a Memorandum Opinion of this Court, or if the facts in their totality convey a different impression, Diamond Bros. Co. v. Commissioner, 322 F.2d 725, 731↩ (3d Cir. 1963), affg. a Memorandum Opinion of this Court.
9. Roberts Consultants conceded at trial that it was not entitled to $ 6,690 and $ 9,411 of the expense deductions claimed for its 1985 and 1986 taxable years, respectively.↩
10. Both the corporate and individual petitioners argue that they relied on expert advice in filing their returns, and thus should not be liable for the additions to tax for negligence. However, as we stated in RAS of Sand River, Inc. v. Commissioner, supra, the reliance upon expert advice does not necessarily insulate the taxpayer from liability for negligence additions to tax. Enoch v. Commissioner, 57 T.C. 781, 802↩ (1972).
11. An understatement occurs when the amount of tax shown on the return, less any rebate (within the meaning of sec. 6211(b)(2)), is less than the amount of tax required to be shown on the return. See sec. 6661(b)(2)(A).↩